1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8
9
10
11
12
13

MICHAEL FOLEY,

                Plaintiff(s),

v.

MICHELLE PONT, et al.,

                Defendant(s).

2:11-CV-1769 JCM (VCF)

14

**ORDER**

15       Presently before the court is plaintiff Michael Foley's motion to reconsider. (Doc. # 136).

16  Defendants have not responded.

17       Also before the court is plaintiff's second motion for leave to amend. (Doc. # 140).

18  Defendants Shera Bradley; Georgina Stuart; AP Express, AP Express Worldwide, and Jeffrey Pont

19  (the "AP Express defendants")[1] responded. (Docs. # 142, 143, 145, respectively).[2] Plaintiff replied.

20  (Docs. # 147, 148, 149, respectively).

21       Also before the court is defendant Georgina Stuart's motion for summary judgment (doc. #

22  115) and motion for in camera inspection (doc. # 114). Plaintiff responded (docs. # 117 & 120),[3]

23  Stuart replied (docs. # 121, 125, 126).

24

25

26

27

28

[1] "AP Express defendants" includes Jeffrey Pont except when he is referenced with Michelle Pont as "the Ponts".

[2] The AP Express defendants also filed a motion for attorneys' fees and costs (doc. # 146).

[3] Plaintiff also filed a request for judicial notice (doc. # 123).

**James C. Mahan**
**U.S. District Judge**

1   Also before the court is plaintiff's motion for declaratory relief. (Doc. # 131).[4] Defendant

2   Stuart responded (doc. # 133), plaintiff replied (doc. # 138).

3   And last before the court is defendants Nikki Dupree, Kelleher & Kelleher, and John T.

4   Kelleher's ("the Kelleher defendants") motion to dismiss plaintiff's first amended complaint. (Doc.

5   # 154). Plaintiff responded. (Doc. # 158). The Kelleher defendants replied. (Doc. # 159).

6   **I.     Factual background**

7   This case arises out of allegations of conspiracy to deprive plaintiff Michael Foley of his

8   constitutional rights. As plaintiff suggests, this conspiracy includes plaintiff's sister, Michelle Pont,

9   and her husband, Jeffery Pont, who acted with a public safety official, Georgina Stuart, to take

10  custody and control of his children in or about the fall of 2008, in violation of his civil rights. (*See*

11  doc. # 140). While the allegations and conduct at issue are more numerous than laid out here, the

12  court finds this recitation sufficient to address the pending motions before the court.

13  Plaintiff names the following individuals as part of this alleged conspiracy: Patricia Foley,

14  plaintiff's ex-wife; Patricia Foley's divorce attorneys, the Kelleher defendants; Michelle Pont,

15  plaintiff's sister; Jeffrey Pont, plaintiff's brother-in-law;[5] the Ponts' companies, AP Express, LLC

16  and AP Express Worldwide, LCC; Georgina Stuart, a Family Services Child Protective Services

17  ("CPS") investigator; Shera Bradley, a psychologist who performed an evaluation of plaintiff;

18  Manual Carranza and others who used plaintiff's daughter, "E", in a television commercial and also

19  helped watch plaintiff's children at the request of Patricia Foley.[6]

20  In October 2008, plaintiff's children, "E," "M," and "T", were removed from plaintiff's

21  custody following an investigation by CPS. Subsequent family court orders have continued to restrict

22  plaintiff's relationship with his children. Plaintiff alleges that the Ponts made misrepresentations to

23  police, CPS, and family court regarding plaintiff's actions toward his children, specifically "T".

24  . . .

25  ───────────

26  [4] Plaintiff also filed a notice of a constitutional question (doc. # 132).

27  [5] Jeffrey Pont and Michelle Pont are collectively referred to as "the Ponts".

28  [6] Amongst others who plaintiff seeks to add in his second amended complaint.

**James C. Mahan**
**U.S. District Judge**

Specifically, plaintiff alleges that defendant Stuart commenced an investigation and proceedings that resulted in plaintiff's loss of association with his children. Plaintiff argues that in November 2008, Stuart abused her office and power by lying and falsifying reports to the district attorney about plaintiff's abuse of his daughter, "T". (Doc. # 55, ¶ 32).

In April 2009, during the pendency of family court proceedings, Bradley performed a psychological evaluation of plaintiff. Bradley's report concluded that if "reunification is sought with his children, [plaintiff] should participate in weekly individual psychotherapy to teach him to take responsibility for his actions and to develop more appropriate responses in interpersonal situations." (Doc. # 55, ¶ 77). Plaintiff denies this conclusion.

On November 4, 2011, plaintiff filed a complaint in this court. (Doc. # 3). On April 4, 2012, the court granted plaintiff leave to amend his complaint. (Doc. # 53). On April 25, 2012, plaintiff filed a first amended complaint. (Doc. # 55). The first amended complaint alleges violation of 42 U.S.C. §§ 1983 and 1985(3), civil conspiracy, intentional infliction of emotional distress, intentional misrepresentation, defamation, false light, negligence. On October 18, 2012, the court dismissed plaintiff's federal civil rights claims against defendants Bradley, Carranza, the Ponts, and the AP Express defendants with prejudice. (Doc. # 134).

## II.    Motions

### A.    Motion to reconsider (doc. # 136)

Plaintiff requests this court's reconsideration of its October 8, 2012, order dismissing plaintiff's 42 U.S.C. § 1983 claim against the Ponts and the AP Express defendants with prejudice. Further, it appears plaintiff also seeks reconsideration of this court's treatment of plaintiff's allegations against Stuart.

### I.    Legal standard

Under Fed.R.Civ.P. 60(b) the court may relieve a party from a final judgment or order for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or

extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Motions for reconsideration "should not be granted, absent highly unusual circumstances." *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993); *Kona,* 229 F.3d at 889–90 (listing same three factors).

### ii.   Discussion

Plaintiff argues that the style and format of his pro se complaint may have caused the court to overlook some of his claims. Plaintiff also argues that his failure to allege certain facts in a way that "a skilled attorney" would make such allegation constitutes excusable neglect under Fed. R. Civ. P. 60.

"[T]he determination of whether neglect is excusable is an equitable one [ ] depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.,* 231 F.3d 1220, 1223–24 (9th Cir. 2000) (citing *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 395 (1993). These factors are not exclusive.

The court does not find the factors outlined in *Pioneer* establish excusable neglect here. First, the court finds that plaintiff's failure to plead facts known to him at the time he filed his first amended complaint to unduly prejudice defendants. Defendants have been required to defend against two iterations of plaintiff's complaint. This factor weighs against finding plaintiff's neglect excusable. Second, the length in the delay is significant—plaintiff has known of the facts he now wishes to allege since, at least, when he lodged his complaint in November 2011. This is over a year; thus this factor also weighs against finding excusable neglect.

James C. Mahan
U.S. District Judge

1    The third factor, plaintiff's reason for delay, is neutral. The court acknowledges its obligation

2    to liberally construe the pleadings of pro se litigants, *see Balistieri v. Pacifica Police Dep't*, 901 F.2d

3    696, 699 (9th Cir. 1988); however, the pleading must still state a claim for which relief can be

4    granted, *see* Fed. R. Civ. P. 12(b)(6). Plaintiff did not receive feedback from the court as to his §

5    1983 claim against the Ponts and the AP Express defendants until the court issued its order

6    dismissing this claim with prejudice. But even provided plaintiff's previous lack of guidance from

7    the court, equitable balancing requires the court to weigh court efficiency and undue prejudice to

8    defendants against a pro se litigant's attempt to prosecute his case under the applicable pleading

9    standard. Therefore, plaintiff's reason for delay is neutral. Last, the court does not find bad faith in

10   plaintiff's failure to timely allege facts to establish the Ponts and the AP Express defendants' liability

11   under § 1983.

12   Having considered all of the relevant circumstances surrounding the plaintiff's omission, *see*

13   *Pioneer,* 507 U.S. at 395, the court does not find plaintiff's neglect to be "excusable". As such

14   plaintiff's motion for reconsideration is denied.

15               **B.    Motion to amend (doc. # 140)**

16   Plaintiff seeks to file a 102 page second amended complaint. The proposed second amended

17   complaint alleges causes of action against six new defendants—bringing the total number of named

18   defendants to 24. The proposed second amended complaint seeks to allege two federal claims: (1)

19   conspiracy to deprive constitutional rights; and (2) civil conspiracy to deprive, defame, defraud, and

20   discriminate in violation of Title IX, in addition to five state law causes of action.

21               **I.    Legal standard**

22   Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given

23   when justice so requires." The Supreme Court has interpreted Rule 15(a) and confirmed the liberal

24   standard district courts must apply when granting such leave. In *Foman v. Davis,* 371 U.S. 178

25   (1962), the Court explained: "In the absence of any apparent or declared reason—such as undue

26   delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

27   amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1  amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely

2  given.'" *Id.* At 182. However, a district court should deny a motion to amend where the amendment

3  is an "exercise in futility." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

4      A proposed amendment is futile if no set of facts can be proved under the amendment that

5  would constitute a valid clam or defense. *Farina v. Compuware Corp.*, 256 F.Supp.2d 1033, 1061

6  (9th Cir. 2003) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). A

7  proposed amendment to a complaint that merely restates and seeks to reinstate claims that already

8  have been dismissed may be properly denied as futile. *Ross v. City of Waukegan*, 5 F.3d 1084 (7th

9  Cir. 1993).

10      In addition, leave to amend may be denied if a court determines that "allegation of other facts

11  consistent with the challenged pleading could not possibly cure the deficiency." *Abagninin v.*

12  *AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (quoting *Schreiber Distrib. Co. v.*

13  *Serv–Well Furniture Co.*, 806 F.2d 1393, 1401(9th Cir. 1986)). The futility analysis determines

14  whether the proposed amendment would survive a challenge of legal sufficiency under Fed R. Civ.

15  P. 12(b)(6). *Miller*, 845 F.2d at 214.

16      In the Ninth Circuit, it is the consideration of prejudice to the opposing party that carries the

17  greatest weight. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

18      In addition to the Rule 15(a) requirements, the local rules of federal practice in the District

19  of Nevada require that a plaintiff submit a proposed, amended complaint along with a motion to

20  amend. LR 15–1(a).

21          **ii.    Discussion**

22      As an initial matter the court notes that plaintiff attached a copy of his proposed second

23  amended complaint to the motion to amend in compliance with local rule 15-1(a).

24          **a.    Claims dismissed with prejudice**

25      Bradley and the AP Express defendants challenge plaintiffs complaint on the same basis–that

26  plaintiff's second amended complaint impermissibly re-alleges that these defendants violated 42

27  U.S.C. § 1983 and 42 U.S.C. § 1985(3) despite this court's dismissal of these causes of action

28

**James C. Mahan**
**U.S. District Judge**

- 6 -

1    against these defendants with prejudice.

2    Plaintiff argues that he has not re-alleged claims under § 1983 and § 1985(3), but instead

3    brings federal claims under § 1985(2) and Title IX. This is partially true–plaintiff seeks to bring

4    claims under Title IX and § 1985(2), but plaintiff also attempts to re-allege claims under § 1983 and

5    § 1985(3) which was clearly prohibited by the court's last order.

6    While plaintiff has omitted reference to § 1983 and § 1985(3) and re-titled the cause of action

7    "conspiracy to deprive constitutional rights," the content of the allegations are the same. As the

8    proverb goes, "if it walks like a duck, quacks like a duck, looks like a duck, it must be a duck."

9    Skirting the issue by leaving off the name of the section does not change the nature or content of the

10   claim.  Because the court has denied plaintiff's motion to reconsider, he is foreclosed from alleging

11   these claims against these defendants. Given that these claims have been dismissed with prejudice

12   against the Ponts, the AP Express defendants, and Bradley–the court finds amendment futile and

13   denies amendment on this basis.

14              **b.       Futility of newly alleged federal claims**

15                   **1.       Title IX, 20 U.S.C. § 1681**

16   "Title IX prohibits sex discrimination by recipients of federal education funding. The statute

17   provides that '[n]o person in the United States shall, on the basis of sex, be excluded from

18   participation in, be denied the benefits of, or be subjected to discrimination under any education

19   program or activity receiving Federal financial assistance.' 20 U.S.C. § 1681." *Jackson v.*

20   *Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). This statute is only applicable to certain

21   "educational institutions," such as "vocational education, professional education, graduate higher

22   education, and public institutions of undergraduate higher education." 34 C.F.R. § 106.15(d), which

23   operate "academic, extracurricular, research, occupational training, or other education program or

24   activity." *Id.* at § 106.31.

25   . . .

26   . . .

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

1    Not one defendant in this case qualifies as an educational institution. Without a qualifying

2    educational institution named as a defendant, plaintiff's Title IX claim fails as a matter of law.[7]

3                          **2.      42 U.S.C. § 1985(2)**

4    Because plaintiff's § 1985(2) claim is derivative of plaintiff's Title IX claim, which has

5    failed, the court need not address this claim. However, to the extent that plaintiff has attempted to

6    allege an independent § 1985(2) claim, plaintiff's allegation has not satisfied the requirements of this

7    claim. Plaintiff seeks to allege a claim under the second clause of § 1985(2),[8] which deals with

8    conspiracies to interfere with justice in state courts with intent to deny any citizen equal protection

9    of the laws. *See Bretz v. Kelman*, 773 F.2d 1026, 1028-29 (9th Cir. 1985) (en banc). An allegation

10   of racial or class-based animus is required to state a claim under part two of § 1985(2). *Id*.; *see also*

11   *Rutledge v. Arizona Bd. of Regents*, 859 F.2d 732, 735-36 n.2 (9th Cir. 1988).

12   Plaintiff's allegation relies on the nationality of his wife, who he alleges to be Mexican.

13   Plaintiff cannot base his claim on the discrimination of another person or his marriage to that person.

14   Further, the person upon whose race plaintiff relies is one of the "prosecuting defendants" that

15   plaintiff alleges to have conspired to interfere with plaintiff's access to state courts. Nowhere, from

16   the court's review of his 102 page second amended complaint, is there an allegation that plaintiff's

17   racial classification is afforded the protections of § 1985(2).[9]

18   To the extent plaintiff's allegation relies on his gender–that is, defendants interfered in the

19   family court proceedings because plaintiff is male–it is not clear that this class is within the gambit

20   of persons protected by this section.[10] While the case cited by plaintiff, *Wagar v. Hasenkrug*, 486

---

[7] To the extent that Title IX's "program or activity" encompasses Nevada's operation of a department, such as CPS, *see* U.S.C. § 1687, this claim is barred by the applicable statute of limitations. *See infra* n.11.

[8] Plaintiff has conceded this and the requirement of race-based/class-based allegations to satisfy the pleading requirements of this claim.

[9] To the extent that plaintiff states that he has dark skin and is of Mexican-American decent (*see* doc. # 147, 4:16-18), this allegation was never made in the 163 paragraphs that comprise his proposed second amended complaint.

[10] Even though plaintiff's § 1985(2) claim does not allege discrimination based on his gender–the court liberally construes the pleadings of pro se litigants, *see Balistieri*, 901 F.2d at 699, and addresses this claim as if a gender-based discrimination claim was made.

James C. Mahan
U.S. District Judge

- 8 -

F.Supp. 47 (D. Mon. 1980) acknowledges that "sexual animus" is an immutable characteristic–this does not establish that either the Supreme Court or the Ninth Circuit recognizes allegations of discrimination as articulated in plaintiff's second amended complaint to be actionable under the second clause of § 1985(2).

Last, to the extent a § 1985(2) claim based on gender discrimination exists, plaintiff's claim is barred by the statute of limitations. State statutes of limitations for personal injury torts apply in § 1985 actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also McDougal v. County of Imperial*, 942 F.2d 668, 672 (9th Cir. 1991); *see also Chachas v. City of Ely, Nev.*, 615 F. Supp. 2d 1193, 1203 (D. Nev. 2009). The statute of limitations for personal injury claims is two years in Nevada. NRS 11.190(4)(e).[11] The conduct at issue in these claims arose between October 2008, and March 2009, thus the latest plaintiff could have proceeded with his federal claims is March 2011; however, plaintiff did not bring the instant suit until November 4, 2011.

Plaintiff argues that the statute of limitations is tolled under NRS 11.300 against the Ponts and the AP Express defendants because they reside out-of-state, in California. While federal courts look to the state's statute of limitations to establish the time limit to bring an action for some federal claims; that does not mean that the state's procedural laws related to its statute of limitations also bind federal courts. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). However, to the extent that this provision is applicable, the court's understanding of this provision does not permit tolling here. NRS 11.300 is not meant simply to permit plaintiff an indefinite amount of time to sue defendants because they live across the Mojave desert. This provision is intended to preserve a plaintiff's claims who is unable to sue out-of-state defendants because the defendants are not amendable to service of process. *See Seely v. Illinois-California Exp., Inc.*, 541 F. Supp. 1307, 1310 (D. Nev. 1982).

. . .

. . .

---

[11] The two-year statute of limitations also applies to Title IX actions. *See Doe By & Through Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1566 (N.D. Cal. 1993).

James C. Mahan
U.S. District Judge

- 9 -

Here, plaintiff has not alleged any facts to indicate that the Ponts or the AP Express defendants were not amendable to service of process prior to the initiation of the instant lawsuit. *See* NRS 14.065.

### c.      Additional CPS defendants

Plaintiff asserts that the proposed amendments are based on recently discovered facts from public records. (Doc. # 140, 3:16-19). Plaintiff argues that in August 2012, he learned as part of the discovery provided to him by Stuart that there was no court order requiring his children to be taken into protective custody and that CPS found the abuse allegations to be unsubstantiated. Plaintiff seeks to add defendants from CPS who plaintiff alleges to have "abided and acted according to a policy that favors divorcing mothers, and prejudices natural fathers." (Doc. # 148, 4:12-13). Plaintiff advised the court and the named defendants in his first amended complaint that he would seek leave to name the ROE defendants once their identities were ascertained.

However, this information would have been available to plaintiff prior to August 2012, when plaintiff stated he was appraised of this information, because he is a parent of the children who are the subject of the records. Further, plaintiff did not seek amendment until after the court issued an order as to the sufficiency of his first amended complaint in November 2012. Plaintiff's failure to efficiently prosecute his case and seek information and amendment diligently should not prejudice defendants who have been party to this matter since November 2011. *See Collins v. Pitchess*, 641 F.2d 740, 742 (9th Cir. 1981) ("Plaintiff in federal court has a responsibility to prosecute his action diligently.").

### d.      Pendent state law claims

The court finds that plaintiff's proposed amendment to assert federal claims to be futile. *See Foman*, 371 U.S. 178. The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law causes of action against in-state defendants. 28 U.S.C. § 1367(c)(3) ("The district courts *may* decline to exercise supplemental jurisdiction over a [state-law] claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction.") (emphasis added); *see also Wade v. Regional Credit Association,* 87 F.3d 1098, 1101 (9th Cir. 1996) (holding that "where

**James C. Mahan**
**U.S. District Judge**

1   a district court dismisses a federal claim, leaving only state claims for resolution, it should decline

2   jurisdiction over the state claims and dismiss them without prejudice"); s*ee also United Mine*

3   *Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be

4   avoided both as a matter of comity and to promote justice between the parties, by procuring for them

5   a surer-footed reading of applicable law.").

6   Thus, the court would have only diversity jurisdiction over the state causes of action against

7   out-of-state defendants if it were to permit the proposed second amended complaint to stand.

8   However, all defendants, except the AP Express defendants and the Ponts are alleged to be residents

9   of Nevada. The state causes of action that were asserted against these out-of-state defendants in the

10   first amended complaint are the same causes of action that defendant seeks to re-allege his

11   proposed second amended complaint.[12] Thus, the court finds no reason to permit amendment to

12   allege causes of action which have already been alleged.

13   As such, the court declines to permit amendment and considers the pending motions on

14   plaintiff's first amended complaint.[13]

15   **C.   Motion for summary judgment (doc. # 115)**

16   **I.   Legal standard**

17   The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

18   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

19   show that "there is no genuine issue as to any material fact and that the movant is entitled to a

20   judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to

21   isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

22   (1986).

23   In determining summary judgment, a court applies a burden-shifting analysis. "When the

24   party moving for summary judgment would bear the burden of proof at trial, it must come forward

25   

26   [12] Intentional infliction of emotional distress, intentional misrepresentation/fraud, defamation, false light, negligence.

27   [13] The court declines Bradley and the AP Express defendants' requests for attorneys' fees and costs or request

28   to impose sanctions against plaintiff. (*See* docs. # 142, 146).

James C. Mahan
U.S. District Judge

- 11 -

1  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

2  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

3  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

4  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

5       In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

6  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

7  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

8  make a showing sufficient to establish an element essential to that party's case on which that party

9  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails

10  to meet its initial burden, summary judgment must be denied and the court need not consider the

11  nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

12       If the moving party satisfies its initial burden, the burden then shifts to the opposing party to

13  establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio

14  Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party

15  need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed

16  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

17  truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.

18  1987).

19       In other words, the nonmoving party cannot avoid summary judgment by relying solely on

20  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045

21  (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

22  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

23  for trial. *See Celotex Corp.*, 477 U.S. at 324.

24       Where a moving party's papers are insufficient to support a motion for summary judgment,

25  or reveal a genuine issue of material fact, summary judgment is inappropriate. *Martinez v. Stanford*,

26  323 F.3d 1178, 1182-83 (9th Cir. 2003).

27  . . .

28

James C. Mahan
U.S. District Judge

- 12 -

1

    **ii.**    **Discussion**

2

      **a.**    **Statute of limitations**

3

   As stated *supra* II.B.ii.b.2, the state law limitations period govern plaintiff's federal claims

4

brought pursuant to 42 U.S.C. § 1983 and § 1985. *Taylor v. Regents of Univ. of California*, 993 F.2d

5

710, 711 (9th Cir. 1993); *see also Wallace*, 549 U.S. at 387; *see also Silva v. Crain*, 169 F.3d 608,

6

610 (9th Cir. 1999). The statute of limitations for personal injury claims is two years in Nevada. NRS

7

11.190(4)(e). For the purposes of this motion, it is undisputed that Stuart's last contact with plaintiff

8

was in March 2009. (*See* doc. # 115, Ex. A ¶ 14). Because plaintiff did not bring the instant suit until

9

November 2011, this alone bars plaintiff's federal claims. However, even if the suit would have been

10

timely in November 2011, Stuart is afforded the protections of qualified immunity for plaintiff's civil

11

damages claims.

12

      **b.**    **Qualified immunity**

13

   "[Q]ualified immunity protects government officials 'from liability for civil damages insofar

14

as their conduct does not violate clearly established statutory or constitutional rights of which a

15

reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

16

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity applies "regardless of whether

17

the government official's error is mistake of law, a mistake of fact, or a mistake based on mixed

18

questions of law and fact." *Pearson*, 555 U.S. at 231 (citation omitted).

19

   In addressing qualified immunity, a court must determine (1) whether the facts alleged, taken

20

in the light most favorable to the party asserting the injury, show that the defendant's conduct

21

violated a constitutional right, and (2) whether that right was "clearly established". *Cmty. House, Inc.*

22

*v. City of Boise, Idaho*, 623 F.3d 945, 967 (9th Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194,

23

201 (2001), modified by *Pearson*, 555 U.S. 223). Addressing the two prongs of the test in this order

24

is often beneficial, but it is not mandatory. Courts may "exercise their sound discretion in deciding

25

which of the two prongs of the qualified immunity analysis should be addressed first in light of the

26

circumstances in the particular case at hand." *Cmty. House, Inc.*, 623 F.3d at 967; *see also Pearson*,

27

555 U.S. 23.

28

**James C. Mahan**
**U.S. District Judge**

1    Here, plaintiff has not specifically identified any law that makes Stuart's investigation of a

2    child abuse report against plaintiff unlawful. Thus on its face, the facts alleged, taken in the light

3    most favorable to plaintiff, do not demonstrate that Stuart's conduct violated a constitutional right.

4    However, given plaintiff's pro se status, the court liberally construes plaintiff's first amended

5    complaint to determine the basis of plaintiff's claims and if the rights allegedly violated were

6    "clearly established".

7    Plaintiff's allegations stem from the interruption of his contact with his children following

8    a report of abuse and neglect having been made to CPS on October 18, 2008. Plaintiff alleges that

9    Stuart violated his "right to free, normal and equal access, communication and society with [his]

10   children, freedom from false allegations of abuse and deprivation of freedom." (Doc. # 55, 5).

11   Certainly, the right to familial relationship is a fundamental right under the United States

12   Constitution, *see Lassiter v. Dep't of Social Services*, 452 U.S. 18, 27 (1981); however, a state has

13   a legitimate interest in curtailing the abuse and neglect of its minor children, see *Santosky v. Karmer*,

14   455 U.S. 745, 766 (1982).

15   Stuart's conduct did not deprive plaintiff of a constitutional right because he has no

16   constitutional right to be free from a child abuse investigation. *See Hodge v. Jones*, 31 F.3d 157, 164

17   (4th Cir. 1994). Thus, at the very least, any right that plaintiff alleges to have been violated due to

18   Stuart's investigation of child abuse allegations was not "clearly established" even if such a right did

19   exist.

20   Thus, the court finds that qualified immunity protects Stuart from liability for civil damages

21   because her conduct did not violate a clearly established right of which a reasonable person would

22   have known. *See Pearson*, 555 U.S. at 231. Further, to the extent that plaintiff seeks injunctive relief,

23   the court turns to the merits of plaintiff's claims.[14]

24                                   **c.      § 1983 claim**

25   Section 1983 provides relief against "[e]very person who, under color of any statute,

---

26

27   [14] Qualified immunity does not bar injunctive relief in actions under § 1983. *Pearson*, 555 U.S. 236, Thus, addressing the merits of plaintiff's claims is necessary to resolve his request for an injunctive relief, even if qualified immunity shields Stuart from liability for damages.

28

**James C. Mahan**
**U.S. District Judge**                                      - 14 -

ordinance, regulation, custom, or usage, of any State . . . causes . . . any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Section 1983 gives parties "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 394 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Parties can seek relief under § 1983 against persons acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "Persons" covers "state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities." *Vance v. Cnty. of Santa Clara*, 928 F.Supp. 993, 995–96 (N.D.Cal. 1996). In a personal-capacity § 1983 claim, a government official personally causes a deprivation of a federal right and is personally liable. In an official-capacity claim, the governmental entity or its agents act as the "moving force" behind the deprivation, and the entity remains liable for the actions of its agents. *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985).[15]

"The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged." *Baker*, 443 U.S. at 140. As previously discussed, *supra* II.C.ii.b., plaintiff's claim that Stuart violated his "right to free, normal and equal access, communication and society with [his] children, freedom from false allegations of abuse and deprivation of freedom" is not a precise constitutional violation. However, the court has determined that this claim seeks to assert the right to familial relationship, *see Lassiter*, 452 U.S. at 27.

Here, it is undisputed that Stuart investigated a child abuse allegation against plaintiff, and

---

[15] Also, the Eleventh Amendment protects state officials acting in their official capacities against § 1983 suits for damages. *Hale v. State of Ariz.*, 993 F.2d 1387, 1399 (9th Cir. 1993). The rationale behind the extended immunity to such officials is that a civil rights suit against the official would be "no different from a suit against the State itself." *Will v. Michigan, Dept. of State Police*, 491 U.S. 58, 70-71 (1989). Section 1983 does not amount to a congressional abrogation of their immunity because state officials acting in "their official capacity are not 'persons' within the meaning of § 1983." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997)). Thus, to the extent that plaintiff seeks damages against defendant in her official capacity, the court finds dismissal appropriate.

James C. Mahan
U.S. District Judge

1    plaintiff has failed to establish that he has a constitutional right to be free of such investigation. As

2    such, Stuart has demonstrated that plaintiff has failed to make a showing sufficient to establish an

3    element essential to his § 1983 claim, on which he would bear the burden of proof at trial. *See*

4    *Celotex Corp.*, 477 U.S. at 323–24. Stuart is entitled to summary judgment on this claim.

5                            **d.      § 1985(3) claim**

6           To demonstrate a violation of § 1985(3), plaintiff must show that defendant "conspired to

7    deprive plaintiff (or a class of persons of which the plaintiff is a member) of equal protection of the

8    laws, thereby causing injury to him or his property." *Briley v. State of Cal.*, 564 F.2d 849, 858-59

9    (9th Cir. 1977). Section 1985 is intended to apply to those conspiracies interfering with the rights of

10   others founded upon "some racial, or perhaps otherwise class-based, invidiously discriminatory

11   animus." *Id.* at 859.

12          Here, plaintiff's § 1985(3) claim fails. Plaintiff has presented no case law or other controlling

13   authority extending § 1985(3) to situations involving religious discrimination. While the Supreme

14   Court has not excluded § 1985(3) claims based on religious animus per se, *see Griffin v.*

15   *Breckenridge*, 403 U.S. 88 (1971); *see also United Broth. of Carpenters and Joiners of America,*

16   *Local 610, AFL-CIO v. Scott*, 463 U.S. 825 (1983); the Supreme Court also has not extended the

17   statute to protect those subject to religious discrimination. Thus, the court finds that any harm caused

18   to plaintiff on the basis of his religion is not actionable under § 1985(3).

19          The court finds that Stuart has met her burden by demonstrating that plaintiff failed to make

20   a showing sufficient to establish an element essential to his § 1985(3) claim of which he would bear

21   the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. Stuart is entitled to summary

22   judgment on this claim.

23                          **e.      Pendant state law claims**

24          The remaining claims against Stuart are state law claims: civil conspiracy to deprive, defame,

25   defraud, and harm plaintiff; intentional infliction of emotional distress; intentional misrepresentation

26   (fraud); defamation; and false light. This court has discretion to decline to hear the supplemental

27   state law claims once it has dismissed all federal claims. *San Pedro Hotel Co., Inc v. City of Los*

28

**James C. Mahan**
**U.S. District Judge**

*Angeles*, 159 F.3d 470, 478 (9th Cir. 1998); 28 U.S.C. § 1367© (stating that a "district court[ ] may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (ellipses omitted) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

When considering whether to exercise supplemental jurisdiction, a federal court "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon*, 484 U.S. at 350. "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.*

After considering the *Carnegie-Mellon* factors, the court declines to exercise supplemental jurisdiction. All of plaintiff's remaining claims are state law claims. The issue of whether the state of Nevada has waived sovereign immunity on the remaining tort law claims is best resolved by Nevada state courts interpreting Nevada common law. Plaintiff's state law causes of action against Stuart are dismissed without prejudice.[16]

**D.    Motion for declaratory relief (doc. # 131)**

Plaintiff has moved for declaratory relief under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201. The instant motion functions as a motion for judgment in plaintiff's favor on the prayer for declaratory relief in the first amended complaint. Ultimately, plaintiff challenges the state family court's determination with regard to his custody of, and access to his children as well as the state courts' application of statutes in state family court proceedings that have resulted in an interruption of plaintiff's contact with his children. It is unclear whether plaintiff seeks to have this court enjoin an

---

[16] Because the court's basis of the grant of summary judgment does not rely on the contents of any of the exhibits attached to Stuart's request for in camera inspection, request for order authorizing release of family services records, and request for order authorizing juvenile court records (doc. # 114), the court denies defendant's request as moot.

1  ongoing state court proceeding, or a final judgment by a state court, or both. Ultimately, it does not

2  matter. To the extent the proceeding is ongoing, this court abstains pursuant to *Younger* and *Juidice*.

3  To the extent plaintiff wants this court to overturn a final state court decision, the *Rooker-Feldman*

4  doctrine precludes review by this court.[17]

5           **I.**    *Younger-Juidice*

6        Plaintiff objects to a state court child welfare proceeding and the application and

7  interpretation of Nevada statutes in that case. This court must abstain for well established reasons.

8        A federal court should abstain from hearing a case that would interfere with ongoing state

9  proceedings. *Younger v. Harris*, 401 U.S. 37, 43-55 (1971). "Younger abstention is required if the

10  state proceedings are (1) ongoing, (2) implicate important state interest, and (3) provide the plaintiff

11  an adequate opportunity to litigate federal claims." *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613

12  (9th Cir. 2000). "In addition, a state has a vital interest in protecting the authority of the judicial

13  system, so that its orders and judgments are not rendered nugatory." *H.C.*, 203 F.3d at 613 (quoting

14  *Juidice v. Vail*, 430 U.S. 327, 336 n. 12 (1977)).

15        An important state interest is implicated because "family relations are a traditional area of

16  state concern." *Moore v. Sims*, 442 U.S. 415 (1979).  This case is a particularly appropriate situation

17  for abstention because the state courts have a special expertise and experience in domestic relations

18  and custody situations that this court lacks.  *See H.C.*, 203 F.3d at 613; *see also Peterson v. Babbitt*,

19  708 F.2d 465, 466 (9th Cir. 1983) ("The strong state interest in domestic relations matters, the

20  superior competence of state courts in settling family disputes because regulations and supervision

21  of domestic relations within their border is entrusted to the states, and the possibility of incompatible

22  federal and state court decrees in cases of continuing judicial supervision by the state makes federal

23  abstention in these cases appropriate.").

24        Breaking down the *Younger* factors in this case: (1) if the state child welfare proceeding is

25  ongoing; (2) the state child welfare proceeding implicates an important state interest–namely, the

26

27      [17] The court notes that none of the evidence submitted by plaintiff for this motion has been properly authenticated. However, this failure does not effect the court's analysis of the instant motion under these abstention doctrines.

28

James C. Mahan
U.S. District Judge

protection of children in Nevada; and (3) plaintiff can assert his constitutional rights regarding contact with his children in the state court proceeding. Thus, even if the orders in the state court welfare proceeding are not yet final, Younger bars this court's intervention into the proceeding because any order of declaratory relief from this court would have the practical effect of interfering with the state proceeding.

### ii.   *Rooker-Feldman*

Plaintiff challenges certain aspects of the state court rulings arising out of divorce and custody proceedings between plaintiff and Patricia Foley.

It is well-established that a United States District Court does not have authority to review the final determination of a state court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986). Review of state court decisions can only be secured in the United States Supreme Court. *See Feldman*, 460 U.S. at 482; *McNair*, 805 F.2d at 890.

Furthermore, a district court may not exercise jurisdiction over constitutional claims that are "inextricably intertwined" with claims decided in state court proceedings. *See Feldman*, 460 U.S. at 482 n. 16; *McNair*, 805 F.2d at 892. A federal claim that was or could have been raised in a state court action is inextricably intertwined with a state court judgment. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of a state court judgment. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J. concurring).

Thus, to the extent that plaintiff wishes this court to consider whether the state family court incorrectly decided the divorce and child custody proceedings, this court lacks subject matter jurisdiction over those claims. *See Marran v. Marran*, 376 F.3d 143, 153 (3d. Cir. 2004). Plaintiff, assuming an appeal would be timely, may seek relief in the state court system.

### iii.   Issue preclusion

Further, to the extent that the family court proceeding has concluded, it has a preclusive effect under the doctrine of issue preclusion. Under Nevada law, "the following factors are necessary for

**James C. Mahan**
**U.S. District Judge**

- 19 -

application of issue preclusion: (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated." *Five Start Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008).

Based on the plain language of plaintiff's assertions before this court, the issues for which he seeks this court's review are identical to the issues before the state court, those issues have been reviewed on their merits and are final, the parties to this suit are either the same or in privity with the parties to both the state child welfare and child custody proceedings, and the issues were actually and necessarily litigated.

**E.      Motion to dismiss FRCP 4(m) (doc. # 154)**

The Kelleher defendants were involved in the legal representation of Patricia Foley in divorce proceedings in state family court. The Kelleher defendants move to dismiss plaintiff's first amended complaint against them under Fed. R. Civ. P. 4(m). (Doc. # 154).

Fed. R. Civ. P. 4(m) provides: "If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice."

Plaintiff filed an amended complaint on April 25, 2012. (Doc. # 55). Pursuant to Fed. R. Civ. P. 4(m), on August 30, 2012, the clerk of the court provided notice to plaintiff that the action would be dismissed as to defendants John T. Kelleher, Nikki Dupree, and Kelleher & Kelleher, if plaintiff did not file proof of service of process by September 29, 2012. (Doc. # 118).

On February 7, 2013,  plaintiff filed a certificate of service stating that he served the first amended complaint on the Kelleher defendants on January 24, 2013. (Doc. # 156). This service is nine months after the filing of the first amended complaint and four months after the extended deadline for service provided by the court.[18]

---

[18] The court notes that plaintiff responded to the notice explaining that his reason for failing to timely serve these defendants was to spare them litigation costs. (*See* doc. # 129). The court finds this response insufficient to toll the deadline for service for two reasons. First, the decision of whether to obligate a party to defend against an action was

1     "Plaintiff should be aware that although he is representing himself in this action, he is

2     nevertheless obligated to follow the same rules as represented parties." *King v. Atiyeh*, 814 F.2d 565,

3     567 (9th Cir. 1987). Lack of awareness of the applicable rules and procedures is no excuse for failure

4     to comply with those rules. *See Swimmer v. IRS*, 811 F.2d 1343, 1344 (9th Cir. 1987). This is

5     particularly true of an order that includes a specific directive to plaintiff. From the time service

6     would have been timely, until these defendants were served, the case has continued with a large

7     number of documents being filed and discovery being conducted. Thus, the court finds dismissal

8     without prejudice as to the Kelleher defendants under Fed. R. Civ. P. 4(m) appropriate.

9     **III.    Conclusion**

10          Accordingly,

11          IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Michael Foley's

12    motion to reconsider (doc. # 136) be, and the same hereby is, DENIED.

13          IT IS FURTHER ORDERED that plaintiff Michael Foley's second motion for leave to

14    amend (doc. # 140) be, and the same hereby is, DENIED.

15          IT IS FURTHER ORDERED that defendants AP Express, AP Express Worldwide, and

16    Jeffrey Pont's motion for attorneys' fees and costs (doc. # 146) be, and the same hereby is, DENIED.

17          IT IS FURTHER ORDERED that defendant Georgina Stuart's motion for summary judgment

18    (doc. # 115) be, and the same hereby is, GRANTED. Plaintiff's state law claims against Stuart are

19    dismissed without prejudice.

20          IT IS FURTHER ORDERED that defendant Georgina Stuart's motion for in camera

21    inspection (doc. # 114) be, and the same hereby is, DENIED as moot.

22          IT IS FURTHER ORDERED that plaintiff Michael Foley's motion for declaratory relief

23    (doc. # 131) be, and the same hereby is, DENIED.

24          IT IS FURTHER ORDERED that defendants Nikki Dupree, Kelleher & Kelleher, and John

25    T. Kelleher's motion to dismiss plaintiff's first amended complaint (doc. # 154) be and the same

26

27    made when plaintiff named these defendants in his suit. Second, while the court did not respond to this "notice" that does not equate to the court finding "good cause" for failure to timely serve these defendants. The court "responds" to

28    motions, not notices. Thus, the court finds dismissal without prejudice appropriate.

**James C. Mahan**
**U.S. District Judge**

1  hereby is GRANTED. This action is dismissed against these defendants without prejudice.

2      DATED March 13, 2013.

3

4  _____

5  **UNITED STATES DISTRICT JUDGE**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**